Eastern District of Kentucky
F I L E D
JUL 2 8 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO. 04-513-GWU

ORA J. SIZEMORE, PLAINTIFF,

VS. **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 CFR 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 CFR 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 CFR 404.1520(c), 404.1521, 416.920(c), 461.921.

1

Sizemore

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 CFR 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 CFR 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 CFR 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 CFR 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 CFR Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged

3

pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

<u>Duncan v. Secretary of Health and Human Services</u>, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. <u>Harris v. Secretary of Health and Human Services</u>, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. <u>Id. Accord, Johnson v. Secretary of Health and Human Services</u>, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. <u>Gooch v. Secretary of Health and Human Services</u>, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, <u>Hale v. Secretary of Health and Human Services</u>, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, <u>McKnight v. Sullivan</u>, 927 F.2d 241, 242 (6th Cir. 1990).

4

Sizemore

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 CFR 416.965(a) and 20 CFR 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most

5

of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 CFR 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's

6

Sizemore

physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Ora J. Sizemore, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of dysthymia/depression, chronic obstructive pulmonary disease, chronic bronchitis secondary to tobacco abuse, gastroesophageal reflux disease, chest pain of uncertain etiology, and chronic knee pain by history. (Tr. 17). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mr. Sizemore retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 20-3). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age of 52 years, 8th grade education but fourth-grade reading and third-grade spelling ability, and work experience as a firefighter and night watchman could perform any jobs if he were capable of light level exertion, and also had the following non-exertional impairments. (Tr. 58). He: (1) would require a sit/stand option; (2) could stand or walk six to eight hours in an eight-hour day (one to two hours without interruption); (3) could sit six to eight hours in an eight-hour day (one to two hours without interruption); (4) could not climb ladders, ropes, or scaffolds or operate foot pedals; (5) could occasionally climb two flights of stairs, balance, stoop,

7

crouch, kneel, or crawl; (6) should avoid unprotected heights, moving machinery, temperature extremes, chemicals, dust, fumes, and all other unusual pulmonary irritants and excessive noise in the workplace; (7) would have a "poor" ability to withstand work stresses or successfully comprehend and execute complex job instructions; (8) would have a "fair" ability to follow work rules, relate to co-workers, tolerate the public, use judgment, interact with supervisors, function independently, maintain attention and concentration, successfully comprehend and execute detailed but not complex job instructions, maintain personal appearance, "behave emotionally stably and relate predictably socially;" and (9) could not interact with supervisors, co-workers, or the general public more than occasionally. (Tr. 58-9). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 59-60).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence.

The ALJ noted in his decision that the plaintiff had made prior applications for SSI, and another ALJ had issued an unfavorable decision on November 24, 1999, which the Appeals Council declined to review, and which was not further pursued. (Tr. 16). The current application was filed January 17, 2003. (Id.). The ALJ applied res judicata through the date of the prior decision and noted that, under the case of Drummond v. Commissioner of Social Security, 126 F.3d 837 (6th Cir. 1997), he was

8

bound by the findings of the prior ALJ absent a showing of improvement in the plaintiff's condition. (Tr. 19, n. 2). The ALJ in the present case adopted the 1999 residual functional capacity finding, although he felt that this was affording the claimant "a generous benefit of the doubt." (Tr. 19). After a review of the evidence, the Court agrees.

Mr. Sizemore alleged disability due to tuberculosis and nerves, but at the administrative hearing, he testified he had not received mental health treatment for two or three years, and that his nerves did not bother him as often as they had in the past. (Tr. 39, 48). His primary recent problem was chest pains, but after a treadmill test, he had been given medication for heartburn. (Tr. 40, 42). He described occasional problems with his knees, right hip, and hands and arms, and became frustrated because he dropped things. (Tr. 42, 49-50).

Medical evidence in the transcript includes a hospital admission from July, 2002 after complaints of chest pain, but myocardial infarction was ruled out by cardiac enzymes (Tr. 160), and an echocardiogram subsequently obtained as an outpatient was described as "virtually normal" and a stress test was completely normal (Tr. 190, 235-6). He was said to be in "Functional Class 1 by treadmill," which represents "no limitation on physical activity." See American Medical Association, Guides to the Evaluation of Permanent Impairment (Fifth Edition, 2001), p. 26. Aciphex was prescribed for gastroesophageal reflux disease, with improvement in chest pain symptoms. (Tr. 189). However, the symptoms gradually

9

Sizemore

returned, and eventually an upper endoscopy was performed in March, 2004, which showed only a small hiatal hernia. (Tr. 240, 242-3). A colonoscopy performed at the same time showed no gross lesion or colitis (Id.), and although a barium enema was scheduled as a follow-up, the plaintiff declined to have it performed (Tr. 239). No functional restrictions were suggested.

Office notes from UK Family Practice Group do indicate that Mr. Sizemore made some complaints of knee and hip pain, but no real findings are listed, and the diagnosis appears to have been a questionable sprain or questionable sciatica. (Tr. 223-6). No functional restrictions are given. Dr. Hughes Helm conducted a consultative physical examination in April, 2003. (Tr. 194). His examination showed a clear chest, normal extremities, no tenderness or spasm of the back, normal heel and toe walking and normal tandem walking and squatting, normal reflexes and sensation throughout, and a normal range of motion except for some symptoms consistent with "mild" carpal tunnel syndrome bilaterally. (Tr. 195-6). Dr. Helm found no evidence for obvious impairment to sitting, standing, moving about, lifting, carrying, handling objects, hearing, seeing, speaking, or traveling. (Tr. 197). He did opine that "repetitive lifting, carrying, or handling objects may cause his mild carpal tunnel syndrome to flare up." (Id.). However, a state agency physician who subsequently reviewed the record concluded that there would be no physical limitations. (Tr. 216). Likewise, a reviewing psychologist concluded that the plaintiff had no medically determinable mental impairment. (Tr. 202).

The plaintiff asserts on appeal that the ALJ failed to give proper weight to his treating physicians, but the fact remains that none of these sources suggested functional restrictions greater than found by the ALJ. Moreover, their examination results were largely benign, or showed only minor problems which would not tend to suggest greater restrictions. Mr. Sizemore's extensive workups for chest pain failed to show any significant cardiac abnormalities, and virtually no objective findings were made by any source regarding his musculoskeletal complaints. Dr. Helm did find some evidence of "mild" carpal tunnel syndrome which he felt repetitive lifting, carrying, or handling "may" have caused to "flare up," (Tr. 197), but this opinion is far from definite, and a subsequent state agency reviewer saw no evidence for any physical limitations. In any case, the plaintiff does not raise this specific issue on appeal.

The decision will be affirmed.

This the __28__ day of July, 2005.

G. WIX UNTHANK
SENIOR JUDGE

11